Good morning, Your Honors. If it pleases the Court, I'm Jason Bach for the Appellant's William and Mary Fouts. In this case, the district court's decision is based entirely on its determination that the state court issued the functional equivalent to a warrant. There simply is no evidence of that fact. The order that the state court issued does not authorize a search and seizure of any kind. The state court order was based entirely on relief that was sought by the property owner, not the government. The government never asked for the state court to issue any type of authorization or warrant. Now, what about the Barlow's case? Doesn't that tell us that a bench order is the functional equivalent of a search warrant? Well, that's true. If that order carries the same particularity requirement that a warrant does. If it's based on an oath or affirmation, if it states with particularity the place to be seized and the items to be seized, it can be a warrant. But that's simply not the case here. What was lacking in this case? If that is the test, what was lacking here? Well, none of it was a part of the state court order. The state court order simply denied the plaintiff's motion for a preliminary injunction and dismissed their complaint. The government never asked the state court to make a finding based upon an oath or affirmation, and the state court's order does not specifically state that it's giving authority to the government to conduct a search and seizure. It doesn't state the place to be seized. It doesn't state the items to be seized. So under the constitutional requirements for a warrant, even if it was given orally from the bench, it doesn't meet the particularity requirements of a warrant. Well, now, there is a statutory procedure. True? Right. And it's supplemented by local ordinances. Is that the picture? Yes. The county ordinances. Right. And if in this instance the county had gone into the court of general jurisdiction, which I think, what, the district court? The district court, yes, Your Honor. And it had asked for the court to allow it to do what it ultimately did. The defect in that procedure would have been that it was bypassing all of the notice requirements and everything else in the statute and in the ordinances. True? True. So to the extent that the county followed the statutes and followed the ordinances, at least at that stage, everything was done correctly, if you will. At least they followed the ordinances or tried to. Up to that point, yes. The only step they failed to take to ultimately satisfy everything that you say is lacking was having failed to go to a court to enforce what the county commissioners had ordered. If the court agreed. If the court agreed to enforce it, that's the route that, in your view, they should have taken. Yes. Instead, the property owner, if you will, beat them to the punch by saying, we're going to the court that I think you should go to before you touch my automobiles. I'm going there first. And I'm going to get an order telling the county it can't do what the commissioners have said it can do. And all the court said is everything the county did was on the up and up. Now, the problem is that instead of having the county as a plaintiff, it has the property owner as the plaintiff. And what difference would the procedures have been had we reversed the parties? Well, we don't know what would have happened had the government asked the state court to issue a warrant. There was no oath or affirmation that came before that court, at least on the record anyway, that gave that court the authorization to issue a warrant. And a warrant can't be implicit. It has to be explicit. It has to state the items that are going to be seized, the place where those items are located. And that simply, we don't have that in this case. Well, suppose the piece of paper came out as a decree of the court saying, take possession of these articles and abate this public nuisance, but it wasn't labeled warrant. Still be okay, wouldn't it? Well, but it didn't say that. Yes, I know it didn't. But it would have been okay even without the label warrant, would it not? Yes. And now, whatever the court said, at least up until the time the automobiles were removed, was said orally, right? That's correct. And the case you rely on had no judicial involvement, right? That's correct. And this case, if it is different from that one, is because of judicial involvement. Right. Now, I want to be sure that you feel we understand your case, and I don't want to occupy all of your time here. Go ahead. I appreciate it. As you pointed out, the case that we rely on, Conner v. City of Santa Ana, establishes that when a search and seizure like this of a property owner's vehicles is done without a warrant, it's a violation of their constitutional rights. So there's a footnote in Conner, I think it's footnote 7, that makes a distinction between what was going on there and the judicial writ, which would have enforced the city council's nuisance determination. How do you deal with that? Well, there simply isn't a judicial writ in this case either. You know, it's our position that the order that came from the district court is so vague that it doesn't provide any authorization, any affirmative authorization for the government to go and seize these vehicles. In fact, the written order didn't even come down or was not even signed until three days after the search took place. So it's our position that there is no warrant and there isn't a writ that authorizes this search. And the fact that there wasn't a warrant or a writ means under Conner that there was an unlawful search and seizure, that there was a lack of due process by failing to go this extra step in obtaining that warrant, and that there was an unlawful taking of their property. Now, so on the takings issue, the other side is going to say that there was nothing to take. This was all nuisance material and junk, essentially. Do you have an argument that there was any significant value to these older cars? Yes. In fact, we – I'm not sure if this was in the brief or not, but there has been an appraisal of these vehicles over $100,000. So, I mean, if these vehicles were worth over $100,000, they're simply not junk. They're simply not a nuisance. But you got them back, didn't you? No. Most of these vehicles were demolished at the scene. They were smashed, flattened, and placed on a flatbed truck. And some of the vehicles were towed away, and some of the vehicles were recovered. But you got the towed-away vehicles, you got back, did you not? Yes. Okay. Yes. Just one other issue that was not covered in the brief I just wanted to address very quickly. In our opposition to motion for summary judgment, which is part of the excerpt of record, the appellees had argued that they're entitled to qualified immunity based on the fact that they relied on the advice of counsel. As this Court is aware, qualified immunity's objective state of mind is not material. We would just direct the Court to take a look at that argument. In fact, the cases relied upon by the appellees in support of that argument don't support their argument. Even if these individual defendants were acting on what they believe to be lawful authority, they're not entitled to qualified immunity. And I'll reserve the remainder. You may do so, counsel. That's fine. We will hear from the county. I have two lawyers listed on the sheet. Why don't you come on in and identify yourself. My name is Steven Sweikert, and I'm representing Clark County, Nevada, and the Las Vegas Metropolitan Police Department. I will be addressing the issues of takings, due process, and the Fourth Amendment. Mr. Peter Angulo representing the individually named defendants. You have a total of 10 minutes between you, so be sure that you allocate yourself enough time. Yes, Your Honor. This is not really a takings case. To be a takings, the property can't be a nuisance, because courts have consistently held that the abatement of a nuisance is not a compensable taking. Well, now, that's a very interesting argument, because there we do have authorities which make a distinction between the junk, so to speak, that could be on the premises and the premises themselves. Are you arguing this, the entire premises was a nuisance and, therefore, the Fifth Amendment doesn't apply? The entire premises and the condition it was was a nuisance, and there were specific nuisance conditions on the property which were removed. But what do we do with this assertion that there's an appraisal out there that says these vehicles are worth $100,000? Why did you have to destroy them? Well, some of them were necessarily destroyed because the condition they were in was so bad, those that could be taken to a way to a towing company were done so, and he recovered them there. More importantly, if he wanted to challenge the nuisance determination because of the condition of the vehicles, he should have appealed to Nevada Supreme Court instead of bringing this up in Federal court. Well, before that happens, I assume that the police department at least has the duty if there is value to at least tow it away and have it protected subject to whatever rules there are to get it back. And to the extent that was possible, that was done through the use of a towing company. But even just a pile of scrap metal has some value. A pile of dirt has some value. Well, where does this $100,000 appraisal come from? They submitted it to us, but I'm not sure exactly where it comes from. Is it in the record? Because I didn't see it. Is it in the record of this case? I don't recall whether it's in the record. But I would like to bring up a point about something that is in the record. The Fousas claimed that there was no oath or affirmation. That is not the case. An affidavit of Cindy Lucas, who was one of the inspectors conducting the abatement, was submitted to the Judicial District Court. It's in the record at page 373. It is substantially a warrant application. And it describes with particularity what is to be seized as part of the abatement. As a matter of fact, not only by words, it shows in photographs what is to be abated, the nuisance conditions. The judge's order in this case did not specify exactly what was to be abated. What the judge's order did is it upheld the decision below, which was twice appealed, which was the notice of abatement. And that document specifically spelled out where the Fousas property on Sandy Lane and what the debris, rubbish, and refuse, particularly including automobile parts and junk vehicles and weeds. So the Fousas were informed about this, about what was to be seized. They knew about it. And the officer's discretion in conducting the abatement was curtailed. They knew exactly what to abate. They didn't have to guess at their task, nor could they have undertaken a general exploratory rummaging. The judge's order also, by dismissing their complaint, by denying a preliminary injunction to stop the abatement, and by ruling that the abatement order was supported by substantial evidence, was at least the equivalent of a probable cause determination. With those things, the neutral magistrate passing on the reasonableness and statutory authority and the informing of the subject of the scope of the abatement and curtailing the discretion of the officers, that's what's required by the functional equivalency test set forth in Barlow's and by this Court in the Simi Valley, Henderson v. Simi Valley case. Well, all of the action of the district court was in effect negative. You refer to this as an appeal, but it wasn't an appeal. The district court was not sitting as an appellate court. It didn't affirm anything. All it did is dismiss this property owner's action seeking an injunction. So everything we have from the court is simply a non-event, a negative, if you will, dismissing the action. It doesn't give you any affirmative relief. It doesn't use the word affirm. And I doubt very much that it saw itself as an appellate court. Am I wrong? And you're saying, well, since the court said no to the landowner, the converse is true. It's saying yes to the county. Now, it didn't go so far as to say yes to the county. It simply said no to the landowner. Well, I think that's true, but it's a little bit more complicated than that. The judge specifically ruled that the abatement decision was supported by substantial evidence, and they specifically denied relief to stop the abatement, essentially saying we can go forward. It's the reverse, like you said. Yes. Now the score is nothing to nothing, if you will. Well, given the procedures that did take place, a warrant would have provided no incremental benefit as far as Fourth Amendment protections. The functional equivalency that I've discussed was established, but more importantly, I think they got more than they would have received if the county had just applied for a warrant, because the proceedings weren't ex parte. Okay. What do you make of the Conner case, which your opposing counsel relies on? The Conner case is not on point for two reasons. One is that case was about the absence of a judge in the proceedings where there was legitimate privacy interest. Here there was a judge involved, but there was no legitimate privacy interest. As you can see from the photographs, this property or the property where they stored their junk vehicles was an open field, about a half acre packed with about 60 vehicles separated from the home by a buffer zone and a line of trees and visible to the public. That's not the type of area where you can harbor the intimacies of home life. So no warrant should be required in the first place. I'm not sure how much time I have left, but if there are any more questions. There's a clock that should be available to you right there. Is it not showing the time? Two minutes, 46 minutes? Second. I have two minutes. You have 2.46, but is there no clock in front of you? There isn't. If there are no questions, I'll have Mr. Angulo take the rest of the time. Yes. Just stop the clock for a second. Is there a way we can get that clock installed? Normally, there should be the twin to what I have here, which is a reverse clock showing the amount of time left. For some reason, it's not there, and we will get one delivered. But in the meantime, your Kill Council has two minutes and 44 seconds left. Just one question. Yes, Your Honor. This business of somehow or another this case involves some compensation for taking is kind of a new twist, at least that has escaped me until now. But I just want to ask, does Nevada have the typical inverse condemnation remedies? Yes, Your Honor. I know that such cases have happened. That there are such remedies. There are such remedies. For any taking of property, there's that State remedy. Yes, Your Honor. All right. Thank you. Good morning, Your Honors. In the remaining 2 minutes and 46 seconds, I'll briefly state the position of my clients. Mr. Angulo, would you identify yourself for the record? Certainly, Your Honor. My name is Peter Angulo, and I represent the individually named defendants in this case, the appellees, who are the members of the Clark County Public Response Office. Before I touch on the issue of qualified immunity, just two things briefly. The first was to the question about what the judge decided. In addition to the request for a preliminary injunction, the plaintiff also sought Mr. Fouts and his wife also sought a complaint at the same time that challenged the sufficiency of the decision of the court or of the county commission as to whether or not this was actually a nuisance on his property. I, likewise, was unaware of a value of $100,000 being placed on the property. It may have been raised in the lower proceedings, but it certainly wasn't part of the record of which I'm aware. Nevertheless, if that matter had been raised before the court or in the proceedings below, that had already been argued, had been brought before the judge, and a hearing was held on that matter. The judge did two things. He denied the request for injunctive relief with a claim by the appellant saying they're going to come and take this from my property. These cars of value, my junky wood and all the debris I have, the 100 cubic yards of debris I have in my front yard, they're going to come take that from me if you don't stop them. And the judge said I will not stop them from doing that. This is junk, and I will allow it to happen. At the same time, the county filed on this behalf a motion to dismiss the entirety of the complaint, arguing that what was here was a public nuisance, not some valuable restoration property, not something of private interest, but something that was an offense to the community as a whole. And the court agreed and granted, based on the substantial evidence that was before the county, and said this was, in fact, a nuisance. And so I think it's different than the court simply saying that it did nothing. What it did was it refused to stand in the way of the authorization, which is all a judge does with a warrant. They come to the judge and they say, Your Honor, here's the facts we have in front of us. We're asking the court to allow us to take certain actions. And the court says, I won't stop you from taking those actions. You have the authority and blessing of this court to go forward and do what you need to do. That's what exactly is what happened in this case. And that's what I think makes it substantially different from Connor. The oral statement of the judge was very clear. The minutes are included as part of the record and have not been disputed. No one said that that's not really what the judge said nor what he intended to say. And it's clear that I apologize, Your Honor. I see my time has expired. Unless there are additional questions, I'll go ahead and rest on the briefs. No questions. Certainly. You may finish your statement. Just briefly, Your Honor, and I don't want to take the issue of qualified immunity. The appellees, the individual appellees, absolutely had the right, given the flux of law in this area, disputing circuits, the fact that even Connor indicated that some matters where judicial intervention occurs goes without the warrant requirement of the Fourth Amendment. Had the right to go and ask for counsel. They did that. They received counsel from their legal attorney and followed that. Therefore, Your Honor, at the very least, they're entitled to qualified immunity. Thank you, counsel. Mr. Bach, you have about a minute left in your reserved rebuttal time. I have to ask you, I couldn't find, or at least I wasn't aware of any appraisal of $100,000 in this record. Where does that come from? First of all, is it in the record or not? I don't believe it is in the record. All right. So we can't entertain that. Is there any valuation in the record at all? No, there's no information in there as far as the valuation of the vehicles are concerned. Dealing first with the issue of this being an open field, this was not an open field. This was a property, a one-acre property that the house sat on. It had a buffer of trees. It was surrounded by private property. It had a barbed wire fence around the property and a no trespassing sign. This is simply not an open field. All I would ask is that the court look at the order that was issued three days after the search took place. It's in the Exeter record at page 406. The appellees had raised the issue that perhaps the appellants could have appealed to the Supreme Court. Well, they can't appeal to the Supreme Court until the order is issued. The order was issued three days after the search. The vehicles were destroyed. It would have been moot. Thank you. Thank you, counsel. Just one. Do you concede, do you not, that Nevada has the adequate inverse condemnation remedies? I believe they do. All right. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Leavy